HON. GILBERT W. SNYDER Mayor, Dunkirk
We acknowledge receipt of your letter stating that under the present provisions of the Charter of the CIty of Dunkirk the city attorney and city sealer of weights and measures are elective officers whose terms of office expire December 31, 1977, and that successors were elected at the general election in November, 1977, to two-year terms of office commencing on January 1, 1978; you also state that at that election a new city charter was submitted to and approved by the electors and under the new city charter the city attorney and city sealer of weights and measures are appointive officers instead of being elective. You inquire:
 "1. Are these two positions Mayoral appointments to be made January 1, 1978 or do the City Attorney and Sealer of Weights and Measures continue in office for the two year elected term even though the new Charter was adopted on August 2, 1977?
 "2. Provided these two offices are Mayor appointments as of January 1, 1978 and provided the Mayor was to appoint someone that Council would not ratify, would the present City Attorney and Sealer of Weights and Measures continue until the Mayor appointed someone the Council would ratify?"
The new city charter effective date is provided in section 19.00, as follows:
"§ 19.00 EFFECTIVE DATE OF CHARTER
 "This Charter upon approval by referendum in the manner provided by law, shall become effective January 1, 1978, and all elective offices as provided by this Charter shall be filled at the General Election of November, 1977."
The new city charter lists elective city officers in section 2.00; the two officers here involved are not listed as elective. The new city charter lists appointive city officers in section 2.03; the two officers here involved are listed as appointive. The new city charter deals with terms of appointive officers in section 2.05 and provides, in part, as follows: "The initial term of all appointive officers shall commence January 1, 1978."
In the absence of a Constitutional provision to the contrary, no one has a vested right in a public office. Butler v Pennsylvania, 10 How [US] 402 (1850). There is no Constitutional provision in the State of New York creating a vested right in either of the two elective offices mentioned in your inquiry.
The New York Constitution Article IX, § 2, subdivision c, paragraph 1, grants to municipalities the right to determine the mode of selection and removal and terms of office of its officers and that power is also contained in Municipal Home Rule Law § 10, subdivision 1, paragraph ii, clause a, subparagraph 1; Municipal Home Rule Law § 23, subdivision 2, paragraphs e and g require that there be a mandatory referendum for the approval of a local law which:
 "e. Abolishes an elective office, or changes the method of nominating, electing or removing an elective officer, or changes the term of an elective office, or reduces the salary of an elective officer during his term of office.
"g. Creates a new elective office."
The referendum requirement was complied with at the general election in November, 1977.
In Gertum v Board of Supervisors, 109 N.Y. 170 (1888) it was held that the office of justice of the peace (now termed town justice) may be abolished after election but prior to the commencement of the term of the justice-elect. In O'Connor v Greene, 174 Misc. 597 (1940), it was held that after the election of a village police justice now termed village justice) who then took the oath of office for a term to commence on January 1, 1940, and the village board of trustees passed a resolution on December 28, 1939, to abolish the office, the resolution was effective, the office was abolished and the police justice-elect had no right to the office.
In our opinion, the successful candidates at the general election in November, 1977, for the offices of city attorney and city sealer of weights and measures, will never assume those elective offices by virtue of their election because those elective offices have been abolished upon the expiration of the terms of the present incumbents and are replaced by newly created appointive offices. The enclosed copy of an informal opinion of this office reported in 1976 Atty Gen [Inf Opns] 312 contains further comment upon the abolition of an elective office and the creation of an appointive office in place thereof.
Public Officers Law § 5 relates to holding over in office. It provides, in part, that every officer (with certain exceptions not here relevant) "having duly entered on the duties of his office, shall, unless the office shall terminate or be abolished, hold over * * *." The abolition of the elective offices and their replacement by creation of identical but appointive offices without change in purpose, function, duties and title, is a determination of the mode of selection of those offices as contemplated by the Constitutional and statutory provisions above cited but is not the abolition of an office such as is contemplated by Public Officers Law § 5, which envisages the elimination of an office and its function or the elimination of an office and the transfer of its function elsewhere.
In our opinion, if appointments are not made to fill the appointive offices on or after January 1, the present incumbents of the elective offices will hold over in office.